IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| NOMAD GLOBAL COMMUNICATION SOLUTIONS, INC., | CV 20–138–M–DLC |
| Plaintiff, | ORDER |
| vs. | |
| HOSELINE, INC., | |
| Defendant. | |
| HOSELINE, INC., | |
| Third-Party Plaintiff, | |
| v. | |
| TUTCO, INC., | |
| Third-Party Defendant. | |

Before the Court is Third-Party Defendant Tutco, Inc.'s[1] motion to dismiss Defendant Hoseline, Inc.'s Third-Party Complaint (Doc. 5) for lack of personal jurisdiction and Plaintiff Nomad Global Communication Solutions, Inc.'s motion

---

[1] The "Inc." designation is actually a misnomer. While Hoseline, Inc.'s Third-Party Complaint against Tutco alleges that, upon information and belief, Tutco is a corporation (Doc. 5 at 19), in its amended answer, Tutco clarifies that it is a limited liability company. (Docs 19-1 at 2; 25 at 2.)

1

to amend.  (Docs. 18; 21.)  For the following reasons, the Court grants Tutco's motion to dismiss and denies Nomad's motion to amend.

## BACKGROUND[2]

This controversy arises from a fire that occurred in Ohio on or about December 19, 2017, when a National Guard unified command suite, referred to by the parties as a "Unified Command Suite B2 Custom Made Shelter" ("UCSb2"), ignited.  (Doc. 4 at 3, 7.)  The UCSb2 was assembled in Montana by Nomad, a Montana corporation, using HVAC units created by Hoseline, a Florida corporation.  (*Id.* at 2, 5.)  After the fire, Nomad furnished Hoseline with expense reports for its incurred and expected damages related to the fire remediation and filed this action against Hoseline on August 5, 2020, claiming strict products liability, breach of contract, and breach of warranty for allegedly delivering faulty HVAC components.  (*Id.* at 9–12.)

On September 4, 2020, Hoseline answered Nomad's complaint and impleaded Tutco, a Pennsylvania limited liability company with its principal place of business in Tennessee.  (Docs. 5 at 19; 25 at 2.)  Nomad asserts claims against Tutco for products liability, negligence, breach of warranty, and contribution and indemnity.  (Doc. 5 at 22–26.)

---

[2] For the purposes of this motion, the Court accepts as true the uncontroverted facts alleged in Nomad's amended complaint and Hoseline's third-party complaint.  *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

Tutco manufactured the open coil heater component that was eventually incorporated into the Hoseline HVAC unit alleged to have caused the fire within the UCSb2. (Doc. 5 at 19–20.) Tutco sold the open coil heater to Hoseline, and Hoseline then sold the HVAC unit to Nomad. (*Id.* at 20.) Tutco advertises its products nationally through its website, sells its products in Montana both directly and indirectly, and derives a portion of its annual revenue from Montana. (*Id.*)

In support of its motion, Tutco has filed the declaration of Richard Farrell, Tutco's former National Sales Manager. (Doc. 19-1 at 2.) Mr. Farrell's declaration states, while "Tutco has customers that may have locations in Montana," it does not "design any products specifically for use in Montana, does not market any product specifically to [or for use in] Montana . . . and does not direct any advertising specifically into Montana." (Doc. 19-1 at 2.)

Mr. Farrell also states that in 2018 and 2019, Tutco's sales to Montana businesses only accounted for .002% of its annual sales, and, as of December 11, 2020, Tutco had not made any sales to Montana businesses during the year. (*Id.* at 2–3.) Otherwise, according to Mr. Farrell, Tutco has little to no contacts with Montana and had no knowledge that Hoseline was selling its products to "Nomad in Montana or elsewhere." (*Id.* at 3–4.) Neither Hoseline nor Nomad have filed supporting affidavits or declarations opposing Tutco's motion to dismiss.

**LEGAL STANDARD**

Tutco's challenge is brought pursuant to Federal Rule of Civil Procedure 12(b)(2), which allows for dismissal for lack of personal jurisdiction. "[I]n ruling on a motion to dismiss for lack of personal jurisdiction, a court may consider declarations, discovery materials, and uncontroverted allegations in the complaint." *Buckhorn Energy Oaks Disposal Servs., LLC v. Clean Energy Holding Co.*, 2017 WL 1247863, at *1 (D. Mont. Mar. 24, 2017) (CV 16-141-BLG-TJC). Importantly, Hoseline bears the burden of proving this Court has personal jurisdiction over Tutco. *Schwarzenegger*, 374 F.3d at 800. But because this motion is based on written filings, as opposed to an evidentiary hearing, Hoseline need only make a prima facie showing of personal jurisdiction. *Id.* In determining whether personal jurisdiction exists, this Court takes all uncontroverted evidence in the complaint as true and resolves conflicts between the parties regarding statements in affidavits in Hoseline's favor. *Id.*

**DISCUSSION**

**I.    Tutco's Motion to Dismiss (Doc. 18)**

The Fourteenth Amendment's Due Process Clause limits a state court's power to exercise jurisdiction over a defendant. *Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021). Personal jurisdiction may either be general or specific. *Id.* General jurisdiction exists "only when the defendant is

essentially 'at home' in the State" and may involve claims unrelated to the forum state or the defendant's activities there. *Id.* (citing *Goodyear-Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Specific jurisdiction exists where a defendant purposefully avails itself of the privilege of conducting activities within the forum state and an affiliation exists between the forum and the underlying controversy. *Id.* at 1024–25.

For personal jurisdiction to be proper, under either the general or specific frameworks, two requirements must be met: (1) the law of the forum must allow for personal jurisdiction, and (2) the exercise of jurisdiction must be constitutional. *Schwarzenegger*, 374 F.3d at 800. Where, as is true in this case, there is "no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which [it] sits." *Id.* Montana Rule of Civil Procedure 4(b)(1) serves as Montana's long-arm statute. *King v. American Family Mut. Ins. Co.*, 632 F.3d 570, 578 (9th Cir. 2011). Critical to the adjudication of this motion, Montana's long-arm statute permits the exercise of personal jurisdiction over any person "found within the state" or who commits "any act resulting in accrual within Montana of a tort action." Mont. R. Civ. P. 4(b)(1)(B).

Tutco argues it is subject to neither general nor specific jurisdiction in Montana. (Doc. 19.) Hoseline counters that Tutco is subject to personal jurisdiction in Montana, under both the general and specific jurisdiction analyses.

(Doc. 23.)  Nomad, on the other hand, argues only in favor of the exercise of specific jurisdiction.  (Doc. 22.)  Alternatively, Hoseline and Nomad assert the Court should permit the parties to conduct jurisdictional discovery, which, they contend, is likely to yield additional relevant jurisdictional facts.  (Docs. 22 at 25; 23 at 16.)

Ultimately, the Court finds that it cannot exercise personal jurisdiction over Tutco.  The Court further finds that jurisdictional discovery is unlikely to yield any additional facts that would alter this conclusion.  Finally, because Nomad seeks to amend its complaint only for the purpose of naming Tutco as a defendant, the amendment would be futile and its motion to amend will be denied.

### A. General Jurisdiction

Tutco argues it is not subject to general jurisdiction in Montana because, under *Daimler AG v. Bauman*, 571 U.S. 117 (2014), its contacts with Montana are not "so constant and pervasive as to render [it] essentially 'at home' in Montana." (Doc. 19 at 6.)  Hoseline maintains Tutco's business with Montana is indeed constant and pervasive because, as a world leading manufacturer of open coil heating elements, Tutco's products are constantly sold to Montana, both directly and indirectly through local distributors.  (Doc. 23 at 12–13.)  Hoseline further contends Tutco's annual sales estimate of .002% is misleading because it fails to consider the percentage of sales to Montana in prior years—most notably, the year

of the accident that gave rise to this lawsuit—and could still be equal to many millions of dollars. (*Id.*) The Court rejects Hoseline's arguments and finds general jurisdiction is lacking in this case.

Montana's long-arm statute permits a court to exercise general jurisdiction when a party is "found within the state of Montana." *Milky Whey, Inc. v. Dairy Partners, LLC*, 342 P.3d 13, 17 (Mont. 2015) (citing Mont. R. Civ. P. 4(b)(1)). Similarly, the due process requirement of general jurisdiction is always satisfied when a defendant is found within the forum state. *Daimler*, 571 U.S. at 137 ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home."). In this respect, Montana's long-arm statute is coextensive with the constitutionality of personal jurisdiction, and "the jurisdictional analyses under state law and federal due process are the same." *King*, 632 F.3d at 578–79; *see also Milky Whey*, 342 P.3d at 17.

A corporation is "at home" in its "place of incorporation and principal place of business." *Daimler*, 571 U.S. at 137. In *Daimler*, the Supreme Court noted a corporation might be subject to general jurisdiction somewhere other than its state of incorporation and principal place of business, but only in "an exceptional case." *Id.* at 139 n.19. Such an exceptional case exists "only when the corporation's affiliations with the [state] in which suit is brought are so constant and pervasive as

to render it essentially at home in the forum [state]." *Id.* at 122 (citing *Goodyear*, 564 U.S. at 919).

The Supreme Court in *Daimler* offered *Perkins v. Benguet Consol. Min. Co.*, 342 U.S. 437 (1952) as an example of an exceptional case. 571 U.S. at 129, 139 n.19. In *Perkins*, the Court found an Ohio court could exercise general jurisdiction over Benguet, a Philippines corporation with all its operations in the Philippines. *Id.* at 129. Benguet's only connection to the forum state was that its president moved to Ohio, where he maintained the company's files and oversaw its activities, during the Japanese occupation of the Philippines in World War II. *Id.* Thus, the Court held, "Ohio was the corporation's principal, if temporary, place of business." *Id.* at 129–30.

The Ninth Circuit's holding in *Martinez v. Aero Caribbean*, 764 F.3d 1062 (9th Cir. 2014), is, by way of contrast, a paradigmatic *un*-exceptional case. There, the Court rejected California's exercise of general jurisdiction over an out-of-state aircraft manufacturer, where the manufacturer made sales "worth between $225 and $450 million" to California, had contracts with eleven non-party California suppliers, sent representatives to California to promote its products, and advertised in trade publications with distribution in California. *Id.* at 1070. These contacts, the Court held, were not sufficient to meet *Daimler's* stringent "exceptional circumstances" requirement for general jurisdiction. *Id.*

General jurisdiction over Tutco is absent in this case. It is undisputed, based on the pleadings, affidavits, and briefs submitted, that Tutco is a Pennsylvania limited liability company headquartered in Tennessee. (Docs. 5 at 19; 25 at 2.) In other words, it is not incorporated in Montana, nor does it have its principal place of business here. Accordingly, only under exceptional circumstances, not present in this case, would Tutco be considered "at home" in Montana.

Hoseline and Nomad contend this standard is met because of Tutco's substantial business dealings in Montana. Specifically, they point to the following uncontroverted facts: (1) Tutco advertises its products nationally through its website, including, presumably, to Montana businesses; (2) Tutco directly sells some of its products in Montana; (3) Tutco indirectly sells, through the stream of commerce, its products to Montana buyers; (4) Tutco derives some portion of its annual revenue from Montana; and (5) in 2018 and 2019, Tutco's sales to Montana accounted for .002% of its annual sales. (Docs. 5 at 19–20; 19-1 at 2–3.)

Even under those facts, Tutco's business dealings with Montana are not "so constant and pervasive" as to render this the sort of "exceptional case" where the exercise of general jurisdiction would be proper. Indeed, the out-of-state corporation in *Martinez* arguably had a greater presence within the forum state; yet, the Ninth Circuit held those contacts were not sufficient to satisfy the "exceptional circumstances" standard of *Daimler*. *Martinez*, 764 F.3d at 1070.

9

Similarly, here, Tutco's contacts with Montana do not meet the high demands of due process for an out-of-state corporation to be subject to general jurisdiction.

Although Hoseline's arguments regarding the potentially misleading character of Tutco's .002% figure are valid, Hoseline cites to no cases suggesting an out-of-state corporation's annual revenue of "many millions of dollars" from a forum state is sufficient to subject the corporation to general jurisdiction. Nor does Hoseline plead any facts supporting a finding that Tutco's 2017 annual revenue in Montana was substantially higher than its 2018, 2019, and 2020 revenue. Under these facts, Hoseline has not made a prima facie showing of general jurisdiction over Tutco.

For the foregoing reasons, the Court finds that, under *Daimler*, Hoseline has not established Tutco is subject to general jurisdiction in Montana. As explained above, since personal jurisdiction may be either general or specific, the Court shifts its inquiry to the specific jurisdiction analysis.

### B.   Specific Jurisdiction

Tutco argues it is not subject to specific jurisdiction in Montana because the tort at issue did not "accrue" in Montana, and Tutco does not have minimum, suit-related contacts with Montana such that the exercise of personal jurisdiction would be fair. (Doc 19 at 8, 11.) Therefore, Tutco asserts, neither the law of the forum nor the constitutionality prong of specific jurisdiction is satisfied here. (*Id.*) Both

Hoseline and Nomad contend specific jurisdiction is proper under the Montana long-arm statute's tort accrual provision and the exercise of jurisdiction over Tutco is constitutional. (Docs. 22 at 15, 19; 23 at 17, 21.)

The Court agrees with Tutco—specific jurisdiction is not proper under Montana's long-arm statute because the tort did not "accrue" in Montana. The United States Supreme Court's recent holding in *Ford Motor Co.* does not alter the analysis of the long-arm statute. To the extent *Ford Motor Co.* affects this Court's analysis, it only pertains to the relatedness element of the constitutionality prong of specific jurisdiction. *See generally* 141 S. Ct. at 1026–32; *see also Clarke v. Dutton Harris & Co., PLLC*, 2021 WL 1225881 at *4 (D. Nev. Mar. 31, 2021) (CV-00160-JAD-BNW) (explaining that the impact of *Ford Motor Co.* on personal jurisdiction jurisprudence is the invalidation of the Ninth Circuit's but-for test for determining relatedness). However, since the long-arm statute fails here, this Court need not address the relatedness element of the constitutionality prong. *See Tackett v. Duncan*, 334 P.3d 920, 925–26 (Mont. 2014).

Montana's long-arm statute permits the exertion of personal jurisdiction over any person subject to a "claim for relief arising from . . . the commission of any act resulting in accrual within Montana of a tort action." Mont. R. Civ. P. 4(b)(1)(B). Tutco asserts the relevant tort did not accrue in Montana because the "injury causing event," i.e., the fire, did not occur in Montana, it occurred in Ohio. (Doc.

11

19 at 10.)  Hoseline and Nomad contend the tort accrued in Montana because, regardless of where the fire occurred, the injury to Hoseline—its damages related to the repair and remediation—occurred in Montana.[3]  (Docs. 22 at 17; 23 at 20.)  The Court agrees with Tutco.  The tort accrual provision does not establish personal jurisdiction over Tutco.

For purposes of Montana's long-arm statute, a tort accrues "where the events giving rise to the tort claims occurred, rather than where the plaintiffs allegedly experienced or learned of their injuries."  *Tackett*, 334 P.3d at 928.  In *Tackett*, the plaintiff alleged the out-of-state defendants procured a wire transfer from plaintiff's Montana bank account under false pretenses and with the intent to defraud him.  *Id.* at 924.  However, the alleged conspiracy was formulated and executed outside of Montana; all the defendants' actions occurred outside of Montana; and the only "link" to Montana was the plaintiff.  *Id.* at 929.  The Montana Supreme Court held, "[the plaintiff's] single act of authorizing his local bank in Montana to wire funds to [the defendants] is insufficient to establish that

---

[3] Nomad also argues, in the alternative, Hoseline's contribution and indemnity claim against Tutco did not arise from the fire in Ohio, but from Nomad's damages, and thus the tort of contribution and indemnity accrued where Nomad's losses were suffered.  (Doc. 22 at 17–18.)  However, Nomad cites to no cases, and this Court found no authorities, suggesting a third-party complaint for contribution and indemnity of a products liability action shifts the location of the tort accrual, for purposes of personal jurisdiction, from the place of the injury to the place of the plaintiff's economic losses related to the injury.

12

his tort action accrued in Montana." *Id.* Thus, the facts alleged were not sufficient to satisfy the tort-accrual provision of Montana's long-arm statute.

Here, Nomad may have experienced or discovered its injury in Montana, but the events giving rise to the tort claim, at least those involving Tutco, did not occur in Montana. Tutco manufactured the open coil heaters and sold them to Hoseline in either Florida or Tennessee (Doc. 19-1 at 2), and the fire occurred in Ohio (Doc. 4 at 7). The only contacts with Montana occurred when Hoseline sold the HVACs containing Tutco's open coil heaters to Nomad and when Nomad suffered its damages related to the Ohio fire. These facts are analogous to *Tackett*, where the plaintiff suffered his losses in Montana, but the out-of-state defendants' actions were executed outside Montana. Thus, under *Tackett*, the tort cannot be said to have "accrued" in Montana.

Hoseline also argues a different rule governs products liability cases. (Doc. 23 at 17.) Specifically, Hoseline cites to *Ford Motor Company v. Montana Eighth Judicial District Court*, 443 P.3d 407 (Mont. 2019), and several decisions from this Court, for the proposition that a tort action accrues in the state where the injury is suffered. (Doc. 23 at 18–19.) Hoseline's assertion is mistaken. In *Ford Motor Co.*, the Montana Supreme Court confined its long-arm statute analysis to one short paragraph, wherein the court held the tort accrued in Montana because the plaintiff was "driving . . . in Montana when the accident occurred." 443 P.3d at

13

412–13.  Contrary to Hoseline's assertions, the court in *Ford Motor Co.* did not suggest that a products liability tort accrues where "the injury was suffered." *Id.* at 413 n.1; (Doc. 23 at 19.)  The remainder of the court's opinion concerned the constitutionality prong of specific jurisdiction, not the tort accrual provision, and the United States Supreme Court's affirming opinion in *Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017 (2021), did not address Montana's long-arm statute.  *See generally* 141 S. Ct. 1017.

Additionally, this Court's prior decisions in the context of products liability are inconsistent with Hoseline's argument.  In *Meeks v. Nutramax Laboratories Veterinary Sciences, Inc.*, 2019 WL 6219865 (D. Mont. Nov. 21, 2019) (CV 19-88-M-DLC), this Court applied the rule that "in the context of a products liability claim, 'the injury causing even occurs (and the tort 'accrues') when the product injures the consumer.'"  *Id.* at *2 (quoting *Rodoni v. Royal Outdoor Prods., Inc.*, 2019 WL 2300400, at *1–2 (D. Mont. May 30, 2019) (CV-19-17-M-DLC)).  In *Meeks*, this Court held, "The tort accrued in Montana because the solar charger caught fire in Montana.  Catching fire is the injury-causing event."  *Id.* at *3.

Similarly, in *Rodoni*, this Court held, "Rodoni's design defect claim 'accrued' and the 'injury causing event occurred' when Rodoni 'gently leaned' against Royal Outdoor Products' railing, which failed and caused him to fall from a second-story balcony." 2019 WL 2300400, at *3.  This Court's decision in

14

*Bullard v. Rhodes Pharmacal Company, Inc.*, 263 F. Supp. 79 (D. Mont. 1967), also does not support Hoseline's argument. There, this Court held a plaintiff who purchased, used, and was injured by an out-of-state defendant's product in Montana could establish that her tort accrued in Montana for purposes of Montana's long-arm statute. *Id.* at 81–82.

The above-cited cases are distinguishable from Tutco's situation. In *Meeks*, *Rodoni*, and *Bullard*, individual consumers were physically injured through the use of out-of-state defendants' products in Montana. Here, from a products liability standpoint, the "injury causing event" is the fire in Ohio. The injuries caused were not physical injuries to consumers in Ohio, but economic damages that Nomad suffered in Montana, due to the fact that Nomad is a Montana corporation. Thus, this case is more in line with *Tackett* than any of the products liability cases illustrated above. However, even under the logic of these products liability cases, namely, that a tort accrues where the injury causing event occurred, Hoseline does not prevail because the injury causing event was the fire, which took place in Ohio.

Therefore, Montana's long-arm statute does not permit the exercise of specific jurisdiction over Tutco in this case because Tutco did not commit any act resulting in the accrual of a tort in Montana. Since the law of the forum does not permit the exercise of specific jurisdiction over Tutco here, this Court need not

15

address whether the exercise of such jurisdiction would comport with due process. *See Tackett*, 334 P.3d at 925–26.

### C. Jurisdictional Discovery

Hoseline and Nomad both argue in the alternative the Court should grant jurisdictional discovery for the purpose of determining whether Tutco has more contacts with Montana that might subject it to either general or specific jurisdiction in the State. (Docs. 22 at 25; 23 at 11.) Tutco contends jurisdictional discovery is unwarranted here. The Court agrees with Tutco.

A district court is vested with the broad discretion to permit or deny discovery. *Laub v. United States Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003). Jurisdictional discovery should ordinarily be granted where the jurisdictional facts are controverted or more facts are needed. *Id.* Otherwise, a refusal to grant jurisdictional discovery is not an abuse of discretion "when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction." *Id.* Additionally, parties must make a preliminary showing of jurisdiction—they must specify what facts they expect to uncover during discovery and how those facts would support personal jurisdiction. *First Nat'l Bank of Sioux Falls v. Estate of Carlson*, 448 F. Supp. 3d 1091, 1108 (D. Mont. 2020). Since personal jurisdiction can be either general or specific, the Court

applies the standard for jurisdictional discovery to both types of personal jurisdiction.

### i. General Jurisdiction

First, Hoseline asserts it expects to discover facts supporting a showing of general jurisdiction. Specifically, Hoseline states it expects to discover the following jurisdictional facts: how long Tutco has been providing products to Montana; what products Tutco provides to Montana; whether Tutco's business in Montana has been continuous or intermittent; Tutco's monetary volume of sales in Montana; Tutco's share of the open coil heater market in Montana; whether Tutco sends sales representatives to Montana; whether Tutco has a subsidiary or parent company in Montana; and the identity of manufacturers that incorporate Tutco products. (Doc. 23 at 15–16.)

Discovery into the aforementioned areas is unlikely to reveal facts that would support this Court's valid exercise of general jurisdiction over Tutco. As previously stated, Tutco's business dealings will not subject the company to general jurisdiction absent "exceptional circumstances." *See Martinez*, 764 F.3d at 1070. Based on the facts currently before the Court, and the facts Hoseline hopes to discover, Tutco will likely not be subject to general jurisdiction based on its business contacts with Montana, under the stringent "exceptional circumstances" requirement.

Similarly, further discovery into Tutco's subsidiaries or parent companies is unlikely to yield facts "sufficient to constitute a basis for jurisdiction." *See Laub*, 342 F.3d at 1093. As previously stated, a corporation is "at home" in its state of incorporation and principal place of business. Although Tutco is an LLC, "the reasoning of Daimler applies with equal force." *Finn v. Great Plains Lending, LLC*, 2016 WL 705242, at *3 (E.D. Pa. Feb 23, 2016) (CV 15-4658) (citing *Daimler*, 571 U.S. at 121, where the Supreme Court applied the same test for corporations to Mercedes-Benz USA, LLC). Therefore, the facts Hoseline and Nomad hope to discover through jurisdictional discovery are insufficient to make a preliminary showing of general jurisdiction in this case.

### ii. Specific Jurisdiction

With respect to specific jurisdiction, it is clear that in this case "further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction." *See Laub*, 342 F.3d at 1093. Neither Hoseline nor Nomad assert specifically how jurisdictional discovery will yield more facts to support a finding of specific jurisdiction.

Under the constitutionality prong of specific jurisdiction, Hoseline vaguely contends that jurisdictional discovery is likely to strengthen its argument regarding Tutco's minimum contacts with Montana. However, Hoseline does not describe what facts it intends to discover or how those facts might fit into either the

purposeful direction, purposeful availment, or stream of commerce tests. (Doc. 23 at 25.) Later in its response brief, Hoseline makes another vague assertion that jurisdictional discovery will clarify the extent of Tutco's interjection into Montana, but Hoseline does not describe what information it expects to discover or how that information informs the specific jurisdiction analysis. (*Id.* at 26.) Nomad's argument for jurisdictional discovery is similarly vague. (*See* Doc. 22 at 25.)

Further, since Hoseline and Nomad cannot prevail under the long-arm statute analysis, discovery of jurisdictional facts related to the constitutionality prong of specific jurisdiction would have no concrete effect here. Therefore, with respect to specific jurisdiction, the parties have not "specif[ied] what facts they expect to discover during discovery and how those facts would support jurisdiction." *First Nat'l Bank of Sioux Falls*, 448 F. Supp. 3d at 1108. Accordingly, the Court finds no reason to permit jurisdictional discovery in this case.

## II. Motion to Amend (Doc. 21)

Nomad also filed a motion for leave to amend its complaint, seeking to add Tutco as a defendant. (Doc. 21.) When the time to amend as a matter of course has expired, "a party may amend its pleadings only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(1)–(2). Courts should freely grant leave to amend "when justice so requires." *Id.* "In deciding whether

justice requires granting leave to amend, factors to be considered include the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of the proposed amendment." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989). Because Nomad seeks to amend its complaint only to add Tutco as a defendant, and the Court has concluded it does not have personal jurisdiction over Tutco, the contemplated amendment would be futile. Therefore, the Court denies Nomad's motion to amend.

Accordingly, IT IS ORDERED Tutco's motion to dismiss (Doc. 18) is GRANTED.

IT IS FURTHER ORDERED that Hoseline's Third-Party Complaint is DISMISSED for lack of personal jurisdiction over Tutco.

IT IS FURTHER ORDERED that Nomad's motion to amend (Doc. 21) is DENIED.

DATED this 14th day of April, 2021.

_Dana L. Christensen_
Dana L. Christensen, District Judge
United States District Court